JON E. LITSCHER, Secretary Department of Employment Relations
Section 230.40, Stats., regulates the political activity of classified state employes. The administrator of the Division of Merit Recruitment and Selection in the Department of Employment Relations is responsible for administering the law. Sec.230.40(6), Stats. You state that in the past the administrator has interpreted section 230.40 as permitting classified civil service employes to run for such public offices as school board, city council or county board. You have been informed that a classified civil service employe of a legislative service agency has been told that he could not run for a position on a local school board. You ask several questions concerning this conflict between the legislative service agency's policy and the administrator's understanding of section 230.40. I conclude that the administrator's understanding of the law is correct; a classified employe of a legislative service agency has the right to run for school board. The administrator may enforce the law through appropriate orders to the appropriate appointing authority.
There is no doubt that the relinquishment of the right to run for partisan political office can constitutionally be made a condition of state employment. United States C. Serv. Com'n v.National Ass'n of Let. Car., 413 U.S. 548 (1973); Wisconsin StateEmp. Ass'n v. Wisconsin Nat. Resources Bd., 298 F. Supp. 339, 350
(W.D. Wis. 1969). Absent any statutory prohibition, however, a state employe is free to engage in political activity, including partisan political activity. *Page 69 
Wisconsin's laws do not prohibit or discourage all partisan political activity; rather, the laws encourage state employes to engage in political activities, including partisan political activities. 63 Op. Att'y Gen. 217, 218-19 (1974). The law's clear and unambiguous language requires that classified state employes who run for partisan political office must take a leave of absence for the duration of the election campaign. Sec.230.40(2), Stats. The Legislature has chosen not to require candidates for nonpartisan office to take leaves of absence. See
67 Op. Att'y Gen. 315, 319 (1978). Neither section 230.40 nor any other state law prohibits a state employe from being a candidate for nonpartisan political office or requires a state employe to take a leave of absence to run for nonpartisan political office.
The statutes do not define "partisan." Wisconsin courts have not had occasion to interpret the term except in the context of the open meetings law. That discussion is of little assistance outside of that context. State ex rel. Lynch v. Conta, 71 Wis.2d 662,691-94, 239 N.W.2d 313 (1976). It is not necessary, however, to define the term completely in order to resolve the present issue. School district officers are elected at the spring election. Section 5.58 which governs the spring primary ballots provides "[o]nly nonpartisan candidates nominated for office by nomination papers shall have their names placed on the official spring primary ballot. . . ." Section 5.02(22) defines the spring primary as "the nonpartisan primary held the 3rd Tuesday in February to nominate candidates to be voted for at the spring election." The statutes do not allow a party designation for candidates for school board. Because the ballots do not identify the candidates for school board as being affiliated with any national or state political party, the election is nonpartisan and the office of member of the school board is nonpartisan. SeeUnited States C. Serv. Com'n, 413 U.S. at 577. Under the Hatch Act an election is nonpartisan "if none of the candidates is to be nominated or elected at such election as representing a party *Page 70 
any of whose candidates for Presidential elector received votes in the last preceding election at which Presidential electors were selected." 5 U.S.C.A. § 1503 (1977).
In 63 Op. Att'y Gen. at 219, the attorney general interpreted the predecessor of section 230.40(2) and held that a state agency could not proscribe partisan political activity of state employes covered by the Hatch Act if that activity was permissible under state law. In 73 Op. Att'y Gen. 131, 132 (1984), the attorney general affirmed that earlier conclusion and specifically held that even the prohibition of partisan political activity contained in the Hatch Act could not "empower a state agency to ignore the provisions of section 230.40(2)." That opinion noted that the civil service statutes do not apply to employes included in certified bargaining units. Therefore, if a collective bargaining agreement contains provisions concerning leaves of absence, those provisions, not section 230.40, are controlling. If the classified employe is included in a certified bargaining unit whose collective bargaining agreement is silent concerning leaves of absence for political activities, "the decision whether to grant a leave rests in the discretion of the state agency involved." 73 Op. Att'y Gen. at 133. But the attorney general cautioned that
 [t]he agency also should consider that the Legislature expressly has authorized unrepresented employes to take leaves of absence to run for partisan political office . . . thereby creating the potential for unfairness (and perhaps even the denial of constitutionally-guaranteed equal protection) if represented employes were to be denied leaves of absence to run for partisan political office.
73 Op. Att'y Gen. at 133-34. Absent an applicable collective bargaining agreement or separate statutory authorization, a state agency does not have the authority to impose more stringent conditions on political activity than those imposed under section230.40. *Page 71 
The Legislature has created various legislative service agencies. Under section 230.08(2)(fe), (fm), and (fo) personnel of the Legislative Audit Bureau, the Legislative Fiscal Bureau and the Legislative Council are unclassified. The laws governing the Legislative Reference Bureau, section 13.92; the Revisor of Statutes Bureau, section 13.93; the Legislative Audit Bureau, section 13.94 and the Legislative Fiscal Bureau, section 13.95
all provide that the bureaus "shall be strictly nonpartisan." Section 13.91 requires that "[t]he legislative council staff shall be strictly nonpartisan." Nothing in any of these statutes evidences a legislative intent to treat the classified employes of the legislative service bureaus any differently from classified employes of other state agencies except that they must "be strictly nonpartisan," that is, not identified with national or state political parties. An employe's being a candidate for a nonpartisan office does not violate the statutory command that the agencies be strictly nonpartisan.
You ask whether a classified civil service employe can be prohibited from engaging in any political activity when not on duty "based solely on a supervisor's or employer's belief that the employe's activities may interfere with or impair the person's efficiency during work hours." Section 230.40(1) is clear; it prohibits a person covered by the statute from engaging in any political activity "when not on duty to such an extent that the person's efficiency during working hours will be impaired or that he or she will be tardy or absent from work." Sec.230.40(1), Stats. The statute does not provide that a supervisor or agency may decide to prohibit all off-duty political activity on the belief that such activity will impair the employe's job performance. On the contrary, the statute permits political activity when not on duty unless the person's efficiency during working hours is impaired or he or she is tardy or absent from work. The statute is a simple declaration that off-duty political activity, like any other off-duty activity, will not be accepted as an excuse for poor job performance. The statute permits *Page 72 
personnel actions against an employe if the employe's efficiency is impaired or he or she is tardy or absent from work. It does not permit the agency to make a determination in advance of any facts to support the determination.
You ask whether the administrator of the Division of Merit Recruitment and Selection has the authority to issue orders to enforce the provisions of section 230.40. Section 230.40(6) provides "[t]he administrator shall administer this section." Under section 230.05(4), "[t]he administrator may issue enforceable orders on all matters relating to the administration, enforcement and effect of the provisions of this subchapter for which responsibility is specifically charged to the administrator. . . ." The administrator has the responsibility to enforce the provisions of section 230.40 and issue enforceable orders if the appointing authority will not comply with the law. Under the statute, the administrator has not only the authority to issue such orders, but the duty to enforce the Legislature's regulation of political activity against agencies as well as against employes.
JED:AL *Page 73